IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 15-CR-182-JHP |
| | ) | |
| SCOTT FREDERICK ARTERBURY, | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO UNITED STATES' OBJECTION
TO MAGISTRATE JUDGE'S REPORT ANF RECOMMENDATION**

Defendant Arterbury, by and through his counsel of record, William Patrick Widell, hereby submits the following response to United States' Objection to the Magistrate Judge's Report and Recommendation. In support of such response, Defendant states as follows:

**Facts of the Case**

Defendant adopts and incorporates the factual background, applicable legal principles and legal support set forth in the magistrate's Report and Recommendation (Dkt. # 44). The following is submitted by way of supplement.

**Argument and Authority**

**I. Rule 41(b) Does Not Permit the NIT Warrant**

In the instant case, the government concedes that the search took place outside the jurisdiction of the magistrate that signed the warrant. In its response to Defendant's Motion to Suppress (Dkt. # 34) the government

1

explained that "The nature of the instructions caused the search to be executed once packets of information arrive ... at the user's device." (*Id.* at p. 19). "The information sought to be suppressed traveled from the user's device" in this instance a computer located within the Northern District of Oklahoma "to the Playpen site . . ." *Id.* The government argues that Rule 41(b)(2) and (4) provide a magistrate with authority to authorize the search and seizure of information contained within Mr. Arterbury's computer despite these facts.

## Rule 41(b)(2)

Rule 41(b)(2) allows a magistrate "to issue a warrant for a person or property outside the district if the person or property is located within the district <u>when the warrant was issued</u> but might move or be moved outside the district before the warrant is executed;" (emphasis added).

The only object located within the Eastern District of Virginia was the government server. Mr. Arterbury's computer was—at all times—located in the Northern District of Oklahoma. The server was not the device the government sought to search. In its explanation of "place to be searched" the NIT warrant made clear that the NIT would be used to "obtain information from various "activating computers" regardless of where they might be located. The activating computer was clearly the item to be searched and the information contained within the activating computer was

2

the evidence agents intended to seize.

Even if the Court rules that signing into the Playpen site means that the property to be searched—Mr. Arterbury's computer—was at some point inside the Eastern District of Virginia, Rule 41(b)(2) clearly requires that Mr. Arterbury's computer must have been within the Eastern District of Virginia at the time the warrant was issued. There was no evidence presented at the evidentiary hearing to suggest that Mr. Arterbury's computer was anywhere other than the Northern District of Oklahoma at the time the warrant was issued.

## Rule 41(b)(4)

The government also argued that Rule 41(b)(4)'s "tracking device" provision authorizes a magistrate judge to "issue a warrant to install within the district a tracking device." When users accessed Playpen, the NIT caused data extraction software to be installed on the user's computer, wherever it was located. In the instant case, the computer was at all times located within the Northern District of Oklahoma. The user computer then sent information to a government controlled computer. The plain reading of the rule requires that the computer be present in the Eastern District of Virginia when the device was installed, regardless of whether it was installed physically or electronically.

Rule 41(b)(4) authorizes a tracking device for the sole purpose of tracking

movement. The NIT does not function as a tracking devise. [1] The term tracking devise is defined, for the purposes of Rule 41, in Title 18 U.S.C. §3117(b) as "an electronic or mechanical device which permits track of the movement of a person or object." The NIT installed on Mr. Arterbury's computer was not a "tracking devise" as that term is defined. It did not track movement, it collected data from Mr. Arterbury's computer.

The government argues, in its objection, that Rule 41(b) is sufficiently flexible to include, within its scope, new emerging technology like the NIT even if it is not a traditional tracking device. The simple answer to that argument is that any flexibility Rule 41(b) may have does not extend to the court's jurisdiction.

**II.  Exigent Circumstances do Not Support a Warrantless Intrusion**

In its objection, Plaintiff asserts that exigent circumstances support a warrantless intrusion into a computer located inside the home of Mr. Arterbury.[2] Warrants are generally required to search a person's home or person unless the exigencies of the situation are so compelling that a warrantless search is objectively reasonable. *Mincey v. Arizona*, 437 U.S. 385, 393-94 (1978).

---

[1] "Finally, applying subdivision (b)(4), which allows for tracking devices installed within one district to travel to another, stretches the rule too far . . .Mr. Michaud's computer was never physically located within the Eastern District of Virginia." Order Denying Defendant's Motion to Suppress, *United States v. Michaud*, Case # 15-CR-5351-RJB; DKT. # 140).

[2] A warrantless intrusion into a computer is particularly concerning. In *Riley v. California*, 134 S.Ct. 2473 (2014), the Supreme Court held that devises that have significant data storage capacity differ in both a quantitative and qualitative sense from other objects that may be searched.

4

One exigency found to obviate the need for the warrant requirement is the need to assist persons who are seriously injured or imminently threatened with serious injury. *Brigham City Utah v. Stewart*, 547 U.S. 398, 403 (2006). In order to establish that this exigent circumstance existed, the government must demonstrate that "(1) the officers have an objectively reasonable basis to believe that there is an imminent need to protect the lives or safety of themselves or others, and (2) the manner and scope of the search is reasonable . . .." *United States v. Najar*, 451 F.3d 710, 718 (10th Cir. 2006). The Court must evaluate the facts "as they would have appeared to prudent, cautious and trained officers," but the subjective beliefs of the officers are irrelevant. *United States v. Martiniez*, 643 F.3d 1292, 1296 (10th Cir. 2011).

## There was No Reasonable Basis
## To Believe That an Immediate Emergency Existed

In the instant case, the government claims that "the website contained multiple references indicative of real-time, contemporaneous abuse of children" however, the government provides only a single post in support of that assertion (Dkt. # 44 p. 3). That post, while distasteful, does not indicate a present danger as it references possible future conduct. The government does not provide the post that generated the response. Without more information it is impossible to determine whether the statement is an

expression of fantasy or a sincere desire to assist in causing harm.

Moreover, we lack any information with which to conclude that the harm—if it is intended--is imminent. Not only do we not know what was said to cause that statement to have been made, but we do not know that it garnered any response. The standard to be applied in making that determination as to whether harm is immediate is a reasonable belief. A reasonable does not require absolute certainty. The standard is more lenient than probable cause. *United States v. Gambino-Zavala,* 539 F.3d 1221, 1225 (10th Cir. 2008). "At the same time, a claim of urgent needs or exigent circumstances must have some factual support." *Cortez v. McCauley*, 478 F.3d 1108, 1124 (10th Cir. 2007).[3]

**The Manner and Scope of the Search Were Unreasonable**

Assuming, for the sake of argument, that the Court determines that the post constitutes an imminent danger, the government must still demonstrate that the manner and scope of the search were not unreasonable. According to the affidavit in support of the NIT warrant, "the TARGET WEBSITE contained a total of 95,148 posts . . . and 158,094 total members." (NIT Warrant at ¶ 11, p. 13). Over 1500 unique users visited the website daily and over 11,000 unique users visited the website in a one-week span. (NIT Warrant at ¶ 19, p. 19).

---

[3] In its objection, the government provides data indicating that "twenty-six child victims have been identified or recovered from abuse. No evidentiary support is available for this statistic. More importantly we don't justify a search on the basis of what was found during the search. We look to the evidence present before the search took

The government, in its objection, only provided a single post of concern. While the government referenced multiple other posts, the term "multiple" does not assist us in fixing a number nor does the lack of information regarding such "multiple" posts help in determining whether the additional posts support a reasonable belief in immediate danger.

If as many as 100 posts evinced an imminent threat of harm, than this represents only .0010% of the total posts: a miniscule subset. If all of the posts of concern were posted in the week when 11,000 unique visitors visited the site—as opposed to the approximately seven months the site was online-than only .009% of persons visiting the site represented a potential danger: an even smaller subset. If the 100 speculative posts were all posted on the same day and by unique users, than only 0.06% percent of the users represented the possibility of an imminent danger to anyone.

Mr. Arterbury never posted any message on Playpen. Mr. Arterbury never communicated with anyone on Playpen. At the time the government installed the NIT device onto Mr. Arterbury's computer, the government had no basis to believe that he had communicated with any person or posted any message, particularly one indicating an imminent danger. The only information in the Government's possession at the time the NIT device was installed on his computer in Tulsa was that Mr. Arterbury's computer had accessed the Playpen site.

---

place.

The manner and scope of the search was unreasonable given that it was statistically unlikely that Mr. Arterbury was included in the small subset of persons who posted messages or the even smaller subset of posters who may have posed an imminent threat.[4] The government had no evidence with which to form an objectively reasonable belief that any person in imminent danger was in his home or that his computer contained evidence that could assist them in locating any person in immediate danger. At the time the NIT device was installed, there was simply no basis to "reasonably believe" that searching Mr. Arterbury's computer would assist in locating any person requiring emergency assistance.[5]

The Supreme Court illustrated that "police may enter a home without a warrant when they have an objectively reasonable basis for believing that an occupant is seriously injured or imminently threatened with such injury." *Brigam City Utah*, 547 U.S. at 400. The real problem here is that there was no basis to believe that any person in imminent danger was located in Mr. Arterbury's house. Nor was there any evidence, at the time the NIT was installed, to suggest that the information seized from Mr. Arterbury's computer was reasonably likely to lead agents to any person in imminent danger.

---

[4] The odds of being born with 11 fingers or toes (.002) are better than the odds that a search of Mr. Arterbury's computer would lead to the location of any person in imminent harm. http://www.sheknows.com/living/articles/1023453/what-are-the-odds-21-statistics-that-will-surprise-you. Given that Mr. Aterbury did not post any messages, the odds of an individual becoming U.S. president (1 in 10,000,000) are better. *Id.*

8

## The Police Exigency Rule

The government, in its objection, takes issue with the magistrate's finding that the exigent circumstance was the downloading and distribution of child pornography. According to the government's objection, the exigent circumstance was the contemporaneous abuse of minor children.

As described supra, the government cites to a particular post wherein one Playpen user offers to assist a teen boy have sex with his younger sister. Regardless of how the exigency is described, the analysis is the same. As the magistrate concluded, "In this instance, the specific activity at issue was ongoing only because the Government opted to keep the Playpen site operating while it employed the NIT. The Government cannot assert exigent circumstances when it had a hand in creating the emergency."

The Government chose to allow not only the downloading and distribution of child pornography but, if it is correct in its assertions, allowed "real-time contemporaneous abuse of children" to occur. This activity was only possible because the government chose to not only leave the site up and running, but to host the site. Regardless of the Government's motives, "The police are not free to create exigencies to justify warrantless intrusions. *United States v. Flowers*, 336 F.3d 1222, 1231 (10th Cir. 2003). See also, (*United States v. Anderson*, 154 F.3d 1225, 1234 (10th Cir. 1998); *U.S. v. Mowatt*, 513 F.3d 395 (4th Cir. 2008) (No exigent circumstances as officers

---

[5] At best there was a .06% chance

9

were aware of the marijuana in the apartment before they decided to alert Mowatt of their presence by knocking on the door and demanding admittance and the police created the exigency themselves for no apparent reason).

## Conclusion

This Court should adopt magistrate's Report and Recommendation and Grant Defendant's Motion to Suppress.

OFFICE OF THE FEDERAL PUBLIC DEFENDER
Julia L. O'Connell, Federal Public Defender

By:    s/ William P. Widell
        William Widell OBA #18313
        Williams Tower I, Suite 1225
        One West Third Street
        Tulsa, OK 74103
        Counsel for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on the 5th day of May, 2016, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of Notice of Electronic Filing to the following ECF registrants:

Andrew Hofland
Assistant United States Attorney
110 W 7th St., Suite 300
Tulsa, OK 74119-1013

                                    s/ William P. Widell
                                    William P. Widell