**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   **Case No. 15-CR-000182-JHP** |
| | ) |
| **SCOTT FREDRICK ARTERBURY,** | ) |
| | ) |
| **Defendant.** | ) |

## UNITED STATES' MOTION FOR RECONSIDERATION OF THE COURT'S ORDER SUPPRESSING EVIDENCE

The United States of America, by and through counsel, Danny C. Williams, Sr., United States Attorney for the Northern District of Oklahoma, and Andrew J. Hofland, Assistant United States Attorney, respectfully moves this Court to reconsider its May 12, 2016 Order (Doc. 47) that adopted the Magistrate Judge's Report and Recommendation (Doc. 42) and granted Defendant Scott Fredrick Arterbury's Motion to Suppress Evidence (Doc. 25). *United States v. Hardy*, No. 07-MJ-108-FHM, 2008 WL 5070945, at *1 (N.D. Okla. Nov. 21, 2008) ("A district court has inherent authority to reconsider its rulings as long as it retains jurisdiction over a matter." (internal quotation omitted)). The Order granting suppression merits reconsideration for the following reasons:

ARGUMENT AND AUTHORITY

1.    **The NIT warrant was not void *ab initio*.**

The court's threshold determination that the NIT Warrant was void from the outset because the magistrate judge was without authority to issue it is incorrect. First, even assuming, without conceding, that Rule 41 did not permit the magistrate judge to issue a warrant for the search of activating computers located in other federal districts, the warrant was not wholly void because Rule 41 plainly authorized

the magistrate judge to issue the NIT Warrant for the search of activating computers located within the Eastern District of Virginia and within a territory, possession, or commonwealth of the United States and diplomatic or consular premises and residences of the United States located in foreign states. *See* Fed. R. Crim. P. 41(b)(1) and (5). Second, the Rule 41 violation that the Court found to have occurred in this case—essentially, that the government obtained authorization for the NIT Warrant from the wrong judge in the right district—does not implicate the Fourth Amendment and therefore does not render the warrant utterly void without regard to whether the defendant suffered prejudice. For both of these reasons, the Court's finding that the NIT Warrant was void *ab initio* must be reconsidered.

As argued in its opposition to the defendant's motion to suppress, the United States maintains that the magistrate judge was authorized pursuant to Rule 41(b) (and ultimately, 28 U.S.C. § 636(a)) to issue the NIT warrant to search for activating computers, wherever located, that accessed Playpen to view, download, and distribute child pornography. However, even accepting for the purposes of this motion the court's finding that § 636(a) and Rule 41(b) did not permit the magistrate judge to issue a warrant for the search of activating computers that were located in other districts, the court's finding that the magistrate judge was wholly without authority to approve the NIT warrant is erroneous. In fact, Rule 41(b) permitted the magistrate judge, at a minimum, to issue the NIT warrant for the search of activating computers located within the Eastern District of Virginia and within the territorial and diplomatic areas listed in subsection (5). Since the magistrate judge acted well within her authority to approve the search warrant for these locations, it cannot be said that "there simply was no judicial approval" for the warrant. *See* Doc. 42 at 18.

As a threshold matter, the NIT warrant satisfied the Fourth Amendment's warrant requirements in all respects. As laid out in the United States' Response (Doc. 34), the NIT warrant application established probable cause to search the activating computers of users who intentionally logged on to the Target Website to view, download, and disseminate child pornography. Further, the warrant application particularly described the things to be seized. And the defendant does not claim that the magistrate judge to whom the warrant was presented was not "neutral and detached," as required to ensure the protections afforded by the Fourth Amendment, *Johnson v. United States*, 333 U.S. 10, 14 (1948), or was not duly appointed and authorized to perform all of the functions of a United States magistrate judge in the Eastern District of Virginia. *See* 28 U.S.C. § 636.

Under these circumstances, the magistrate judge was clearly authorized, at a minimum, pursuant to § 636(a)(1) and Rule 41(b)(1) and (5) to issue the NIT warrant, which satisfied the Fourth Amendment's probable cause and particularity requirements, for the search of activating computers in the Eastern District of Virginia and United States' territories and diplomatic locations. Since the magistrate judge was permitted by statute and rule to issue the constitutional NIT warrant for searches within her jurisdiction, the court's finding that she had no authority to issue the warrant is unsound. That the NIT warrant could have been—and in fact was, *see, e.g., United States v. Darby*, No. 16-CR-36-RGD-DEM (E.D. Va. Jun. 3, 2016) (defendant charged with possession of child pornography after deployment of NIT to computer located in the Eastern District of Virginia identified him as a user of Website A)—validly executed in the Eastern District of Virginia distinguishes this case from *United States v. Krueger*, 809 F.3d 1109 (10th Cir. 2015), and *United States*

*v. Glover*, 736 F.3d 509 (D.C. Cir. 2013), which the Court relied upon to find the NIT warrant void *ab initio*.

In both *Krueger* and *Glover*, the warrant applications presented to the judge for approval made clear that the place to be searched was not within the authorizing judge's district. *Krueger*, 809 F.3d at 1111 (warrant presented to magistrate judge in the District of Kansas asked for permission to search home and vehicle located in Oklahoma); *Glover*, 736 F.3d at 510 (warrant presented to district court judge in the District of Columbia asked for permission to install tracking device on vehicle located in Maryland). As a consequence, the courts concluded that the warrants were invalid at the time they were issued because the territorial limitations of Rule 41 (and in *Glover*, of Title III) did not authorize the judges to issue warrants for searches in other districts. *Krueger*, 809 F.3d at 1116-17, 1118 (Gorsuch, J., concurring); *Glover*, 736 F.3d at 515. Here, in contrast, the NIT warrant application presented to the magistrate judge asked for permission to search the activating computers—"wherever located"—that accessed the Playpen server located in the Eastern District of Virginia. Unlike the warrants in *Krueger* and *Glover*, the NIT warrant did not specify that the search would occur only outside of the Eastern District of Virginia, and since the warrant also contemplated a search within the authorizing judge's district, it was presumptively valid at the time it was issued. *Cf. United States v. Moreno-Magana*, No. 15-CR-40058-DDC, 2016 WL 409227, at *14-15 (D. Kan. Feb. 3, 2016) (distinguishing *Krueger* and rejecting claim that warrant issued by Kansas state court judge to search phone was void *ab initio* because, at time warrant was issued, precise location of phone was unknown; thus, unlike in Krueger, where both law enforcement and issuing magistrate knew that the property to be searched was not within the magistrate's district at time warrant was issued, "[t]he

4

warrants here did not authorize pinging of phones that the issuing judge knew to be outside Kansas"). The court should therefore reconsider its finding that the magistrate judge was without any legal authority to issue the NIT warrant.

## 2. The defendant was not prejudiced by any Rule 41 violation and therefore is not entitled to suppression.

Despite finding, on one hand, that the warrant was void *ab initio*, the court completes the Rule 41 suppression analysis in accordance with *United States v. Pennington*, 635 F.2d 1387, 1390 (10th Cir. 1980). The United States agrees that the proper factors to be first considered in determining whether suppression might be warranted for a Rule 41 violation are listed in *Pennington*. In that vein, and without proof of intentional or deliberate disregard for a provision of the Rule, the defendant must demonstrate that he suffered prejudice to merit suppression. *See, e.g., United States v. Michaud*, No. 15-CR-05351-RJB, 2016 WL 337263, at *5-7 (W.D. Wash. Jan. 28, 2016) (rejecting claim that very same NIT warrant issued in this case required suppression due to Rule 41 violation and finding that violation was merely technical and defendant could not establish prejudice); *United States v. Stamper*, No. 15-CR-109-MRB, Doc. 48 at 21-23 (S.D. Ohio Feb. 19, 2016) (same); *United States v. Epich*, No. 15-CR-163-PP, 2016 WL 953269, at *2 (E.D. Wis. Mar. 14, 2016) (discussing same NIT warrant issued in this case and noting that, even if violation of Rule 41 occurred, it did not require suppression); *United States v. Werdene*, No. 15-CR-434-GJP, Doc. 33 at 21 (E.D. Pa. May 19, 2016) (denying motion to suppress the same NIT warrant issued in this case because, in part, the defendant did not prove prejudice, defined in the Third Circuit as "offend[ing] concepts of fundamental fairness or due process"); *Darby*, 16-CR-36-RGD-DEM, Doc. 31 at 25 (E.D. Va. Jun. 3, 2016) (no prejudice when executed within the Eastern District of Virginia insofar as Rule 41(b)(1) would have authorized a search of the magistrate's own district);

5

*United States v. Hernandez*, No. 08-198(1) (JRT/RLE), 2008 WL 4748576, at *15-16
(D. Minn. Oct. 28, 2008) (finding issuance of constitutionally valid warrant by Min-
nesota state court judge for search of bank located in South Dakota to be technical
violation that did not require suppression because defendant was not prejudiced);
*United States v. Vann*, No. 07-CR-247 (JMR/RLE), 2007 WL 4321969, at *22-23 (D.
Minn. Dec. 6, 2007) (similar, where warrant issued by federal magistrate judge in the
District of Minnesota for search of property in the Western District of Wisconsin);
*United States v. LaFountain*, 252 F. Supp. 2d 883, 891 (D.N.D. 2003) (similar, where
warrants issued by tribal court judge). As these cases make clear, violations of Rule
41(b), just like violations of Rule 41's other prerequisites, do not automatically re-
quire suppression without a showing of prejudice to the defendant. *See United States
v. Burgos-Montes*, 786 F.3d 92, 108-09 (1st Cir. 2015), *cert. denied*, 136 S. Ct. 599
(2015) (finding that Rule 41(f)(1)(C) violation does not require suppression absent a
showing of prejudice and noting that "[o]ther circuits have held the same applies to
all the prerequisites of Rule 41") (citing *United States v. Schoenheit*, 856 F.2d 74,
76-77 (8th Cir. 1988), and *United States v. Burke*, 517 F.2d 377, 386-87 (2d Cir.
1975)).

This Court interprets the *Krueger* definition of prejudice to say that the oper-
ative question is not what was possible but what factually happened in this instance.
But this formulation of prejudice, however, "makes no sense, because under that
interpretation, all searches executed on the basis of warrants in violation of Rule
41(b) would result in prejudice, no matter how small or technical the error might be.
Such an interpretation would defeat the need to analyze prejudice separately from
the Rule 41(b) violation." *Michaud*, 2016 WL 337263, at *6. As discussed above, there
is no basis to treat Rule 41(b) violations differently from other Rule 41 violations and

the thus the Court's prejudice formulation, which effectively eliminates the prejudice inquiry altogether by creating a per se rule of suppression for all Rule 41(b) violations, cannot stand.

Here, the defendant's prejudice argument boils down to an assertion that, because he intentionally employed anonymizing technology to perpetrate his crimes against children in the shadows of the dark web, Rule 41(b) prohibits law enforcement from obtaining a warrant authorizing its use of the NIT to identify and locate him. That is not the sort of claimed "prejudice" that should result in suppression. The NIT warrant satisfied the Fourth Amendment's probable cause and particularity requirements, and thus, had it been presented to a judge with authority to issue the warrant—such as a magistrate within the Northern District of Oklahoma—Rule 41 clearly would have authorized the very same search of the defendant's computer that occurred. *See, e.g., Vann*, 2007 WL 4321969, at *23 ("[T]he presence of probable cause for the issuance of the Warrant adequately demonstrates that the same Warrant would have been issued by a Magistrate Judge in the Western District of Wisconsin, if it had been presented for that Judge's review."); *Hernandez*, 2008 WL 4748576, at *16 (same, involving issuance of warrant by state court judge without jurisdiction); *LaFountain*, 252 F. Supp. 2d at 891 (same, involving issuance of warrant by tribal court judge without jurisdiction).

Moreover, although it would have been difficult for the United States to identify the defendant's IP address—the most significant information gathered by deployment of the NIT—without the NIT warrant, the IP address was public information in which the defendant had no reasonable expectation of privacy and thus it was obtainable by other lawful means. *Michaud*, 2016 WL 337263, at *7. *Cf. United States v. Welch*, 811 F.3d 275, 281 (8th Cir. 2016) (finding no prejudice to defendant

7

from violation of Rule 41's notice provision because, had Rule 41 been followed, same search would have occurred and same evidence recovered). In short, had the court applied the proper standard for evaluating prejudice resulting from the Rule 41(b) violation, the record makes manifest that the defendant did not suffer prejudice and that suppression was not an appropriate remedy.

### 3. The good-faith exception precludes suppression of evidence in this case.

Even assuming, without conceding, that the warrant was void at the outset, suppression is not warranted. The court committed two errors in analyzing whether the evidence obtained pursuant to the NIT warrant should be suppressed, notwithstanding the United States' apparent good-faith reliance on the now-invalidated warrant. First, the Court erroneously concluded that the good-faith exception was inapplicable here because the deployment of the NIT was effectively a warrantless search. Second, the Court erroneously concluded that it was not objectively reasonable for law enforcement to have relied on the NIT warrant in executing the search. The record and relevant case law do not support either of those conclusions, and since suppression will serve only to punish law enforcement for a reasonable, if now deemed mistaken, interpretation of Rule 41(b) and will not serve to deter any future violation, the Court should reconsider its conclusion that suppression—a remedy of last resort—is required in this case.

First, as noted above, the warrant was not void *ab initio* because the magistrate judge had authority under both the Federal Magistrates Act and Rule 41(b) to issue the challenged warrant deploying the NIT, at a minimum, within the territorial limits of the Eastern District of Virginia and any possession, territory, or commonwealth of the United States and diplomatic or consular premises and residences of the United States located in foreign states. *See* Fed. R. Crim. P. 41(b)(1) and (5). Even

accepting the Court's finding that the NIT warrant violated Rule 41(b) by permitting a search beyond those geographic boundaries, the error was not one of constitutional magnitude, as it did not vitiate probable cause for the search or render the warrant insufficiently particular. Thus, although the warrant may be "voidable" due to the Rule 41 violation, it does not follow that it is wholly "void" and therefore suppression is automatic. Indeed, other courts have refused to suppress evidence obtained from the same NIT warrant issued in this case, finding that suppression was an inappropriate remedy where the Rule 41(b) violation did not undermine the constitutionality of the warrant and the government's reliance on the warrant was objectively reasonable. *See Michaud*, 2016 WL 337263, at *7; *Stamper*, D.48 at 19-23; *Epich*, 2016 WL 953269, at *2. Other courts have likewise refused to suppress evidence obtained from warrants that were later found invalid due to the issuing judge's lack of authority. *See, e.g., United States v. Master*, 614 F.3d 236, 242-43 (6th Cir. 2010); *Hernandez*, 2008 WL 4748576, at *16-17; *Vann*, 2007 WL 4321969, at *23; *LaFountain*, 252 F. Supp. 2d at 891-92. The analysis in those cases, although not binding on this Court, provides compelling reasons for this Court to reconsider its conclusion that the good-faith exception is inapplicable to this case.

Second, the Court's suppression order is inconsistent with the Supreme Court's recent exclusionary rule jurisprudence. The Supreme Court has made clear that "suppression is not an automatic consequence of a Fourth Amendment violation," but instead "turns on the culpability of the police and the potential of exclusion to deter wrongful police misconduct." *Herring v. United States*, 555 U.S. 135, 137 (2009); *Illinois v. Gates*, 462 U.S. 213, 223 (1983) ("The fact that a Fourth Amendment violation occurred—i.e., that a search or arrest was unreasonable—does not necessarily mean that the exclusionary rule applies."). In *Herring*, the Supreme

Court refused to suppress evidence obtained from the warrantless search of the defendant's person and vehicle incident to his arrest pursuant to a non-existent arrest warrant. *Id.* at 147. The Court explained that, "[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Id.* at 144. The Court's emphasis on balancing deterrence and culpability in *Herring* did not mark a drastic departure from *United States v. Leon*, 468 U.S. 897, 922 (1984), where the Court stated that "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion," but it did signal the Court's shift "toward preserving evidence for use in obtaining convictions, even if illegally seized, than toward excluding evidence in order to deter police misconduct unless the officers engage in 'deliberate, reckless, or grossly negligent conduct.'" *Master*, 614 F.3d at 243 (quoting *Herring*, 555 U.S. at 144). "Indeed, exclusion 'has always been our last resort, not the first impulse,' and our precedents establish important principles that constrain application of the exclusionary rule." *Herring*, 555 U.S. at 140 (quoting *Hudson v. Michigan*, 547 U.S. 586, 591 (2006)).

*Herring* makes clear that this Court erred in holding that the good-faith exception does not apply to a search conducted pursuant to a warrant that is void at the outset. *Herring* involved the unlawful arrest of an individual pursuant to a warrant that had been rescinded five months earlier. 555 U.S. at 137-38. Although the arrest warrant had no legal force—essentially, it no longer existed—and thus did not authorize the defendant's arrest, the Supreme Court proceeded to consider whether the officers' reliance on the non-existent warrant was objectively reasonable in deter-

10

mining whether evidence obtained from the warrantless search incident to the unlawful arrest should be suppressed. Id. at 141-44. Thus, even if this Court adheres to its ruling that the NIT warrant, like the arrest warrant in *Herring*, was no warrant at all, *Herring* dictates that the suppression is not automatic, and that the officers' good faith—as well as the deterrent benefits of suppression—must be considered in deciding whether to invoke the exclusionary rule.

Moreover, assuming that the NIT Warrant is not void *ab initio*, which it is not for the reasons discussed above, the exclusionary rule is not an appropriate remedy because the agents relied on the now-invalidated warrant in good faith, and suppression provides no deterrent benefit. There is absolutely no evidence of deliberate, reckless, or grossly negligent conduct on behalf of the law enforcement agents who applied for the NIT warrant; to the contrary, the warrant application reflects the agents' best efforts to comply with Rule 41(b) by seeking approval for the NIT warrant in the judicial district where the NIT would be deployed from Playpen's server, with which the activating computers voluntarily communicated, and the information it retrieved from the activating computers would be received. Since the location of the activating computers was unknown at the time of NIT deployment, it was not unreasonable for the agents to conclude that the NIT deployment and receipt location into which activating computers were communicating—the Eastern District of Virginia—represented the strongest known connection to the criminal activity under investigation. That the agents' compliance efforts were subsequently found insufficient by this Court does not mean that it was objectively unreasonable for the agents to have believed that the NIT warrant was properly issued, especially "given that reasonable minds can differ as to the degree of Rule 41(b)'s flexibility in uncharted territory." *Michaud*, 2016 WL 337263, at *7. *See also Massachusetts v. Sheppard*, 468

11

U.S. 981, 987-88 (1984) (stating that "the exclusionary rule should not be applied when the officer conducting the search acted in objectively reasonable reliance on a warrant issued by a detached and neutral magistrate," even if that warrant "is subsequently determined to be invalid").

Finally, the court must consider whether "the benefits of deterrence outweigh the costs." *Herring*, 555 U.S. at 141. Suppression is an extreme remedy and the costs to society and the justice system of excluding evidence obtained from the NIT warrant—freeing defendants from prosecution for their crimes against children—are immense, yet suppression will have absolutely no deterrent effect on future police misconduct. On April 28, 2016, the Supreme Court approved an amendment to Rule 41(b) that clarifies the scope of a magistrate judge's authority to issue warrants, such as the NIT warrant, to remotely search computers located within or outside the issuing district if the computer's location has been concealed through technological means. Once this amendment becomes effective on December 1, 2016, the Rule 41(b) violation that the Court found to have occurred in this case will never occur again. Applying the exclusionary rule in this case will only punish law enforcement for a past mistake, not deter any future misconduct. *See Herring*, 555 U.S. at 141 (noting that the primary purpose of the exclusionary rule is "deterring Fourth Amendment violations in the future"). Because the "nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion," *Leon*, 468 U.S. at 922, suppression is not warranted here.

**4.    The facts of this case warrant an exigent-circumstances exception to the application of the exclusionary rule.**

The Supreme Court has recognized that the presumption that warrantless searches are unreasonable "may be overcome in some circumstances because '[t]he

ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Kentucky v. King*, 131 S. Ct. 1849, 1856 (2011) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). "One well-recognized exception applies when 'the exigencies of the situation make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment.'" *Id.* (quoting *Mincey v. Arizona*, 437 U.S. 385, 394 (1978)). Courts must evaluate "the totality of the circumstances" to determine whether exigencies justified a warrantless search. *Missouri v. McNeely*, 133 S. Ct. 1552, 1559 (2013).

In the Tenth Circuit, the *Aquino* test sets forth four requirements for a permissible warrantless entry: (1) there is clear evidence of probable cause for the criminal violation, (2) the crime is a serious one and one in which the destruction of evidence (or other purpose that frustrates legitimate law enforcement efforts) is likely, (3) the entry is limited in scope to the minimum intrusion necessary to prevent the destruction of evidence (or other frustrating purpose), and (4) the exigency is supported by clearly defined indicators that are not subject to police manipulation or abuse. *United States v. Aguirre*, No. 16-CR-0027-CVE, 2016 WL 1464574, at *11 (N.D. Okla. Apr. 14, 2016) (citing *United States v. Aquino*, 836 F.2d 1268, 1272 (10th Cir. 1988).

Here, the four requirements are all satisfied. First, clear evidence of probable cause existed regarding the Tor-based child pornography trafficking investigation. "Probable cause to search requires 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Hendrix*, 664 F.3d 1334, 1338 (10th Cir. 2011) (quoting *United States v. Cooper*, 654 F.3d 1104, 1124 (10th Cir. 2011). As discussed above and laid out more fully in the United States' Response (Doc. 34), the NIT warrant contained sufficient probable cause in light of the identity

13

encryption on the Tor network, Playpen's "hidden service" status, Playpen's landing page, the terms of Playpen's registration, and the vast amounts of child pornography contained within the site.

Second, the trafficking of child pornography is an uncontroversially serious crime. Playpen enabled the ongoing sexual abuse and exploitation of children committed by unidentified offenders against unidentified children. Deploying the NIT against Playpen's users was necessary to stop the abuse and exploitation and to identify and apprehend the abusers, as well as identify and rescue those children. As of early January 2016, use of the NIT in the nationwide investigation of Playpen had led to the identification or recovery from abuse of at least 26 child victims. *See Michaud*, No. 15-CR-5351-RJB (Doc. 109 at 8). The FBI also has identified at least 35 individuals who have been determined to be "hands on" child sexual offenders, and at least 17 individuals who have been determined to be producers of child pornography. *Id*. at 7-8. And the circumstances of the online trafficking on the Tor network indicated that the destruction and loss of evidence was likely. The criminal activity of accessing with intent to view, receipt, and distribution of child pornography was carried out through the encrypted network. As noted in the search warrant application, traditional investigative techniques were either unsuccessful or reasonably unlikely to succeed due to the encryption. The transmittal of the contraband and evidence of the identity of the user was only available while the user was online and accessing the website. Once the user was logged off, the information was no longer being transmitted through the relay nodes and the evidence of what was being transmitted and who was transmitting it was not present for capture. To interdict the criminal activity and capture evidence of the offense, other than the steps taken by law enforcement here, it would have been impossible to obtain a warrant in time

14

to capture the activity. When users might access the site for a matter of minutes or hours, issuing generalized warrants in every district across the country is logistically impossible. *See*, *e.g.*, *Cupp v. Murphy*, 412 U.S. 291, 296 (1973) (affirming use of warrantless search to prevent loss or destruction of "highly evanescent" evidence). Accordingly, the frustration of law enforcement efforts was likely under the circumstances of the defendant's criminal conduct.

Third, as stated above, the search was minimally intrusive since it sought to capture only information—his IP address—that the defendant was readily utilizeing through his Internet Service Provider ("ISP") every time he connected to the Internet or Tor network. Importantly, the defendant's IP address belonged to his ISP, not to him, and courts have held that a defendant lacks a reasonable expectation of privacy in his IP address. *See*, *e.g.*, *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2007); *Michaud*, 2016 WL 337263, at *7 (lack of reasonable expectation of privacy does not change with the use of Tor); *United States v. Farrell*, No. CR15-029RAJ, 2016 WL 705197, at *2 (W.D. Wash. Feb. 23, 2016) (same). Before proceeding with a more invasive entry and search of the defendant's home and electronic devices, the government obtained a Rule 41 warrant issued in this district.

Finally, despite the court's order, the exigency that existed was not subject to police manipulation or abuse. In suppressing the NIT warrant, the court rejects an argument on exigent circumstances stating "the specific activity at issue was on-going only because the Government opted to keep the Playpen site operation while it employed the NIT. The Government cannot assert exigent circumstances when it had a hand in creating the emergency." Doc. 42 at 27. This assertion should be reconsidered in light of *Kentucky v. King*, specifically, law enforcement officers did not take any action that violated or threatened to violate the defendant's Fourth

15

Amendment rights. *King*, 563 U.S. 452, 462 (2011) ("Where . . . the police did not create the exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment, warrantless entry to prevent the destruction of evidence is reasonable and thus allowed."). Here, the exigent circumstances are to prevent the on-going child pornography violations by capturing the perpetrators and the agents complied with the Fourth Amendment. Actions that do not rise to constitutional violations or threats to violate constitutional rights, such as continuing to run the Playpen site, are not relevant to the *King* analysis. Furthermore, there was nothing else the agents could have done to comply with the various rule and statutory restrictions on warrants.

When confronted with the activity on the Playpen site, agents became aware that traffickers in child pornography were utilizing anonymization software to come and go as they pleased on an illicit website, accruing and distributing untold amounts of contraband. In that moment, the exigency was clear and present. Those who downloaded or distributed child pornography prior to the instant the NIT was deployed were getting away with heinous offenses. Agents worked quickly to attempt to capture the fleeting evidence of the crime being committed and identity of the perpetrator. They sought, in good faith, a NIT that was judicially authorized and in compliance with the Fourth Amendment's warrant requirements. As opposed to suppressing the evidence of the defendant's criminal activity, this Court should reconsider and determine that exigent circumstances provide an exception to the exclusionary rule and that the subsequent search warrant in this district remain.

CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court reconsider its order granting the defendant's motion to suppress evidence obtained from the NIT warrant.

Respectfully submitted,

DANNY C. WILLIAMS, SR.
United States Attorney


/s/ Andrew J. Hofland
Andrew J. Hofland, WI Bar #1065503
Assistant United States Attorney
110 West Seventh Street, Suite 300
Tulsa, Oklahoma 74119-1029
(918) 382-2700
andrew.hofland@usdoj.gov


**CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of June, 2016, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for sealed filing and transmittal of a Notice of Electronic Filing to the following ECF registrant:

William Widell
*Counsel for Defendant*

/s/ Andrew J. Hofland
Andrew J. Hofland
Assistant United States Attorney

17